UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | | |
|---|---|---|
| MARONICA SHURON CAMPBELL, O/B/O N.J.C., a minor, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CV420-132 |
| KILOLO KIJAKAZI,[1] | ) ) | |
| Defendant. | ) ) | |

## REPORT AND RECOMMENDATION

Plaintiff Monica Shuron Campbell seeks judicial review of the Social Security Administration's denial of an application for Supplemental Security Income (SSI) filed on behalf of N.J.C., a minor (sometimes "Claimant").

## I.   GOVERNING STANDARDS

In social security cases, courts

> . . . review the Commissioner's decision for substantial evidence. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). "Substantial evidence is more than a

---

[1] Kilolo Kijakazi is now the Acting Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* 42 U.S.C. § 405(g) (stating that action survives regardless of any change in the person occupying the office of the Commissioner of Social Security). The Clerk of Court is **DIRECTED** to update the caption accordingly.

1

> scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (quotation omitted). . . . "We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the Commissioner." *Winschel*, 631 F.3d at 1178 (quotation and brackets omitted). "If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quotation omitted).

*Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014). *see also Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019) ("Substantial evidence . . . is 'more than a mere scintilla.' [Cit.] It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (citations omitted)). Under the substantial evidence test, "findings of fact made by administrative agencies . . . may be reversed . . . only when the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004).

The burden of proving disability lies with the claimant. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005). "For a person under age 18 to be entitled to SSI benefits, that person must have 'a medically determinable physical or mental impairment, which results in marked

and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" *Bryant v. Soc. Sec. Admin.*, 478 F. App'x 644, 645 (11th Cir. 2012) (quoting 42 U.S.C. § 1382c(a)(3)(C)(i)). The Social Security Administration uses a three-step sequential analysis to determine whether a child is entitled to disability benefits. *Parks ex rel. D.P. v. Comm'r of Soc. Sec.*, 783 F.3d 847, 850 (11th Cir. 2015); *see* 20 C.F.R. § 416.924. At the first step, the Commissioner must determine whether the claimant is engaging in substantial gainful activity; if so, the claim is denied. 20 C.F.R. § 416.924(b). At the second step, the Commissioner must determine whether the claimant has a severe impairment or combination of impairments; if the claimant does not have any severe impairments, the claim is denied. 20 C.F.R. § 416.924(c). At the third and final step, the Commissioner must determine whether the child's impairments meet or equal the "listings." 20 C.F.R. § 416.924(d). If the claimant does not have an impairment that meets, medically equals, or functionally equals the listings, she will be found not disabled. 20 C.F.R. § 416.924(d)(2).

## II. ANALYSIS

N.J.C., who alleges disability since January 25, 2017,[2] was 11 years old, a school aged child, at the time of application and 13 years old, an adolescent, when her SSI claim was denied. Tr. 19; 192-201 (protective filing for SSI benefits dated Jan. 25, 2017); *see* 20 C.F.R. § 416.926a(g)(2)(iv), (v). After a hearing, the ALJ issued an unfavorable decision. Tr. 19-34. First, the ALJ found that N.J.C.'s borderline intellectual functioning, anxiety, posttraumatic stress disorder ("PTSD"), and attention deficit hyperactivity disorder ("ADHD") were severe impairments, tr. 22, but that they did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, tr. 22-23.

Next, the ALJ considered the six functional equivalence domains to determine whether the Claimant's impairments functionally equaled the listings. Tr. 23-34; *see* 20 C.F.R. § 416.926a(b)(1). He found that she had no limitation in the domains of "moving about and manipulating objects" and "caring for [her]self." Tr. 31-33. He also found that she had a "less

---

[2] The claimant initially alleged a disability onset date of January 1, 2012, but at the hearing before the Administrative Law Judge requested to amend the alleged onset date to January 25, 2017, the date of filing the protective application. Tr. 19; 48-50.

4

than marked" limitation in the domains of "acquiring and using information," "interacting and relating with others," and "health and physical well-being." Tr. 28-29, 30-31, 33-34. Finally, he found that she had a "marked" limitation in the domain of "attending and completing tasks." Tr. 29-30. Because he did not find "marked" limitation in at least two of the domains, or an "extreme" limitation in at least one domain, the ALJ concluded that her impairments did not functionally equal the severity of the listings. Tr. 34; *see* 20 C.F.R. § 916.926a(d). Therefore, the ALJ determined that she was not disabled. Tr. 34.

Plaintiff contends that the ALJ erred by improperly weighing the opinion of N.J.C.'s treating physician, Manoj Dass, M.D., in making the determination that her severe impairments did not meet a listing. Doc. 20 at 13-17. She further argues that the ALJ failed to properly weigh the opinions of several of N.J.C.'s teachers. *Id.* at 17-23.

### A. Weight of Treating Physician's Opinion

Dr. Manoj Dass, one of N.J.C.'s treating physicians, diagnosed her with major depressive disorder, generalized anxiety disorder, and ADHD. Tr. 27 (citing Exhibit 6F (Tr. 552-556)). Dr. Dass opined in May 2017 that because of her depression, anxiety, and ADHD, she "may have

heightened alertness" if "not properly medicated," tr. 552, that her "grades may go down if not properly medicated," *id.*, that "it may be hard for [her] to participate in activities," *id.* at 553, and that she "may not be able to sit still if not properly medicated," *id.; see* tr. 27 ("[Dr. Dass] noted the claimant's symptoms would increase[ ] when not taking medications."). Dr. Dass also reported in February 2019 that N.J.C. had a "short attention span, was withdrawn, and easily distracted." Tr. 27 (citing Exhibits 17F and 18F (Tr. 618-634)).

In formulating his conclusion that the Claimant's mental impairments do not functionally equal the severity of the listings, the ALJ afforded no evidentiary weight to Dr. Dass' opinion of the severity of those impairments, stating:

> The undersigned affords no evidentiary weight to [Dr. Dass'] opinion of the severity of the claimant's mental impairments because it appears to be based primarily on claimant's subjective reports of symptoms and limitations rather than objective clinical findings. Although the doctor does have a treating relationship with the claimant, the claimant's treatment records reflects [sic] relatively infrequent trips to the doctor, as well as significant gaps in the claimant's history of treatment for the allegedly disabling symptoms. The record does indicate improvement in the claimant's psychiatric

>symptoms when she was compliant with treatment on a consistent basis and taking medications as prescribed.

Tr. 27. Plaintiff argues that this was error, and that it resulted in the ALJ failing to find that N.J.C. had a marked limitation in the domain of "acquiring and using information." Doc. 20 at 13-17. The Commissioner responds that the ALJ's determination was proper. Doc. 21 at 7.

"Absent 'good cause,' an ALJ is to give the medical opinions of treating physicians "substantial or considerable weight."" *Winschel*, 631 F.3d at 1179 (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). Good cause exists "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Id.* (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004)). "With good cause, an ALJ may disregard a treating physician's opinion, but he "must clearly articulate [the] reasons" for doing so." *Id.* (quoting *Phillips*, 357 F.3d at 1240-41). In determining whether an ALJ gave proper weight to a physician's opinion, a court "will not second guess the ALJ about the weight the treating physician's opinion deserves so long as he articulates a specific

justification for it." *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 818 (11th Cir. 2015).

The first reason that the ALJ offered for disregarding Dr. Dass' opinion is that "it appears to be based primarily on claimant's subjective reports of symptoms and limitations rather than objective clinical findings." Tr. 27. Plaintiff argues that this is "inappropriate and flawed because it is the nature of mental illness, as a field of medicine, that medical professionals can often only diagnose it through subjective reports."[3]  Doc. 20 at 14.  When considering how much weight to give a

---

[3] Plaintiff cites as "precedent" two cases from the Middle District of Florida. Doc. 20 at 14 (citing *D'Anna v. Comm'r of Soc. Sec.*, 2009 WL 5214998, at *4 (M.D. Fla. Dec. 30, 2009) and *Booker v. Comm'r of Soc. Sec.*, 2017 WL 6380422, at *5 (M.D. Fla. Dec. 14, 2017)).  These are distinguishable, as explained below, and, moreover, as orders from other districts they have no binding precedential value in this district. *Fishman & Tobin, Inc. v. Tropical Shipping & Const. Co., Ltd.*, 240 F.3d 956, 965 (11th Cir. 2001).

In *D'Anna*, the ALJ rejected a physician's opinions concerning the plaintiff's limitations because he found them to be based solely on plaintiff's subjective reports and behavior.  2009 WL 5214998, at *4.  On review, the court remanded the case for further consideration because, "*if, in fact,* the ALJ's sole basis for discrediting the opinion is that it is based on Plaintiff's subjective reports and behavior, that reason is not supported by substantial evidence." *Id.* (emphasis in original). The court reasoned that "psychological testing and the mental status exam are dependent on a patient's responses and the trained consultant's *observations of the patient's behavior*." *Id.* (emphasis added).  Here, the ALJ's criticism of Dr. Dass' opinion is that it was based, not on the doctor's own observations of the claimant's behavior, but on the claimant's own self-reporting of symptoms.  Tr. 27.

In *Booker*, the ALJ rejected the opinions of two treating physicians because of a claimed "lack of objective, clinical, or laboratory findings to support the severe

medical opinion, one factor the ALJ must consider is the medical evidence and explanation supporting the doctor's opinion. *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (citing 20 C.F.R § 416.927(c)).[4] "A treating physician's report 'may be discounted when it is not accompanied by objective medical evidence or is wholly conclusory.'" *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 583–84 (11th Cir.1991)). Therefore, the ALJ appropriately considered the lack of "objective medical evidence" supporting Dr. Dass' opinions. *See Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 528 (11th Cir. 2015) (rejecting claimant's challenge to the ALJ's assessment of a medical opinion where the ALJ noted, among other reasons, that the physician

---

degree of limitation" those doctors found. 2017 WL 6380422, at *5. Importantly, the court found that the ALJ's conclusion that the opinions were not supported by objective, clinical findings was not supported by substantial evidence. *Id*. In particular, the court identified an "objectively administered test" and "clinical findings" in the record that had apparently been relied upon by the doctors. *Id*. Here, Plaintiff has not pointed to any medical evidence in the record on which Dr. Dass based his opinions, and that the ALJ might have overlooked. *See* doc. 20 at 14. Instead, Plaintiff appears to concede that the opinions were based solely on subjective reports and complaints. *Id*.

[4] Because Plaintiff filed N.J.C.'s application on January 25, 2017, tr. 192, 20 C.F.R. § 416.927 provides the applicable rule for weighing medical opinion evidence. See 20 C.F.R. § 416.927 ("For claims filed . . . before March 27, 2017, the rules in this section apply."). The parties agree that this is the applicable rule for this case. *See* doc. 20 at 14-15; doc. 21 at 9.

9

"apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant").

The second reason that the ALJ offered to support his disregard of Dr. Dass' opinion is the claimant's "relatively infrequent trips to the doctor, as well as significant gaps in the claimant's history of treatment for the allegedly disabling symptoms." Tr. 27. The ALJ goes on to say that:

> [T]he claimant's treatment record reflects infrequent trips to the doctor and significant gaps in history of treatment for her mental health symptoms. Mental health treatment records from 2015-2017 noted the claimant failed to show up for doctor's appointments on a number of occasions. Further, there was almost a 2-year gap in treatment with her recent return in 2019.

Tr. 27; *see also* tr. 26-27 (the ALJ noted that the "claimant . . . missed several scheduled appointments," that the records show a gap of about two years in treatment, that the claimant did not return for follow-up treatment, and that, in May 2017, the physician noted that the "claimant had not been seen in his office since September 2015"). Plaintiff argues that these treatment gaps were a result of her inability to pay, and therefore inappropriate for the ALJ to consider. Doc. 20 at 15-16 (citing tr. 61-62 (Plaintiff's hearing testimony that Dr. Dass' office stopped

10

accepting her insurance, and she was unable to pay the out-of-pocket cost)).

Plaintiff is correct that, where an ALJ bases a denial of benefits on a claimant's noncompliance with prescribed treatment, the ALJ must first consider whether that noncompliance is excused by the claimant's poverty. *See Dawkins v. Bowen*, 848 F.2d 1211, 1213-14 (11th Cir. 1988). "[T]he ALJ may not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue medical treatment without first considering any explanation that might explain the failure to seek or pursue treatment," and the ALJ "must consider evidence showing that the claimant is unable to afford medical care before denying" benefits based on non-compliance with such care. *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 487 (11th Cir. 2012); *see also Brown v. Comm'r of Soc. Sec.*, 425 F. Appx 813, 817 (11th Cir. 2011) ("[T]he ALJ may not draw an adverse inference from a claimant's lack of medical treatment without first considering the claimant's explanation for his failure to seek treatment." (citation omitted)). "When the ALJ 'primarily if not exclusively' relies on a claimant's failure to seek treatment, but does not consider any good cause explanation for this

failure, this court will remand for further consideration." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1268 (11th Cir. 2015).

Here, the ALJ relies on the gap in N.J.C.'s treatment with Dr. Dass several times in determining that his opinion was entitled to no evidentiary weight. Tr. 26-27. Although N.J.C.'s mother testified about her inability to afford the out-of-pocket costs required for her daughter to continue treating with Dr. Dass, *see* tr. 61-62, the ALJ's decision does not address this offered explanation. *See* tr. 23-28. The Commissioner argues that "it is clear that [the ALJ] recognized his duty to consider Plaintiff's inability to afford treatment for N.J.C." since he questioned her about it during the hearing. Doc. 21 at 11. Absent any express consideration of Plaintiff's offered explanation for the treatment gaps, the Court is unable to agree. In the face of information in the record suggesting that N.J.C.'s gaps in treatment may be the result of an inability to pay, and in light of the ALJ's significant reliance on the treatment gaps in determining the weight to afford Dr. Dass' opinion, the ALJ's failure to explicitly acknowledge, let alone discuss, Plaintiff's inability to pay for treatment requires remand. *See Henry*, 802 F.3d at 1268.

### B. Plaintiff's Remaining Arguments

Plaintiff also argues that the ALJ inaccurately concluded that the record indicated improvement in N.J.C.'s symptoms when she was on her medication, and that he improperly weighed the opinions from N.J.C.'s teachers. Doc. 20 at 17-18. Because the Court finds remand appropriate based on the issues identified with the ALJ's weighing of the treating physician's opinion, it need not reach these arguments. *See Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1066 n.4 (11th Cir. 2021) (offering no opinion on all alleged errors where remand required on other issues, but instructing on remand that "the ALJ is to reconsider [claimant's] claim based on entire record").

### III. CONCLUSION

For the reasons set forth above, this matter should be **REMANDED** to the Social Security Administration for further proceedings under 42 U.S.C. § 405(g).

This report and recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Therefore, **within 14 days from the date of this order**, any party may file written objections to this R&R with the

13

Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonette v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 18th day of February, 2022.

_____
CHRISTOPHER L. RAY
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA